United States District Court
Southern District of Texas

**ENTERED**

May 11, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| M.T.,[1] | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00222 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Plaintiff M.T. seeks judicial review of an administrative decision denying her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). M.T. and Defendant Frank J. Bisignano, the Commissioner of the Social Security Administration (the "Commissioner"), have briefed their positions. *See* Dkts. 15, 20, 21. After reviewing the briefing, the record, and the applicable law, I affirm the Commissioner's decision.

## BACKGROUND

On December 14, 2022, M.T. filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 1, 2022. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing. Following the hearing, the ALJ issued a written decision finding that M.T. was not disabled. M.T. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions. This court has taken that guidance a step further in the interest of claimant's privacy and will use only initials in public opinions.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x. 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that M.T. "has not engaged in substantial gainful activity since December 1, 2022, the alleged onset date." Dkt. 7-1 at 23.

The ALJ found at Step 2 that, M.T. "has the following severe impairments: anxiety, depression, osteoarthritis (OA) of bilateral knees, and obesity." *Id.* at 24.

The ALJ found at Step 3 that M.T. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 25.

Prior to consideration of Step 4, the ALJ determined M.T.'s RFC as follows:

[M.T.] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ladders but no climbing ropes or scaffolds. She can frequently climb stairs and ramps, stoop, kneel, crouch, or crawl. She has no balance limitations. She is limited to no work around dangerous moving machinery or unprotected heights. She can occasionally work in extreme heat, cold or humidity. She can understand, remember, and apply information in order to carry-out detailed but not complex instructions. She can concentrate, keep pace, and persist for two-hour periods with customary breaks during an eight-hour workday. She cannot perform work requiring specific production rate (such as assembly line work) but can have an end of the day quota. She can frequently, not constantly, interact with supervisors, coworkers, and the general public. She can respond appropriately to changes in the work setting. She can accept instructions and make decisions in a work setting.

*Id.* at 27.

At Step 4, the ALJ found that M.T. "is unable to perform any past relevant work." *Id.* at 33.

At Step 5, the ALJ found that M.T. "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.*

Accordingly, the ALJ found that M.T. "has not been under a disability, as defined in the Social Security Act, from December 1, 2022, through the date of [the ALJ's] decision." *Id.* at 36.

## DISCUSSION

This appeal presents two issues for my consideration: (1) whether the ALJ's decision is supported by substantial evidence; and (2) whether the ALJ properly evaluated the mental health opinion of Nurse Practitioner ("NP") Feby James Kanatt. I answer both questions in the affirmative.

### A.    THE ALJ'S OPINION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

M.T. contends that the ALJ's decision is unsupported by substantial evidence because the ALJ rejected the State agency opinions as unpersuasive, and then "failed . . . to obtain an assessment from a medical source with access to all of the evidence and succumbed to the temptation to play doctor and craft the RFC from her own attempt to interpret the raw medical data." Dkt. 15 at 8. In other words, M.T. believes that the ALJ should have sought out a medical opinion before crafting the RFC.

To be sure, there are circumstances in which an ALJ should seek out a medical opinion before ruling. But those are circumstances in which the ALJ interprets "raw medical evidence" herself. "Raw medical evidence refers to evidence that does not permit commonsense judgments about functional capacity and instead requires the ALJ to overstep the bounds of a lay person's competence and render a medical judgment. X-ray results are raw medical evidence." *T.M. v. Comm'r of Soc. Sec.*, No. 3:24-cv-00301, 2025 WL 1424352, at *3 (S.D. Tex. May

4

16, 2025) (quotation omitted). In *T.M.*, I held that the ALJ committed harmful error when he interpreted X-ray results himself and crafted T.M.'s RFC in the absence of any medical opinion. But *T.M.* is distinguishable.

In *T.M.*, "the ALJ interpreted raw medical evidence that *was not available* to the staff reviewing doctors." *Id.* Here, however, the State agency reviewer at the reconsideration level *had* the benefit of the only raw medical evidence in the record: M.T.'s December 2023 and January 2024 x-rays. *See* Dkt. 7-1 at 82 ("12/19/23 XR Rt knee shows minimal patellofemoral OA changes. Minimal degenerative narrowing in bilat. femorotibial joints."); *id.* ("1/2/24 CE: . . . Xray of bilat hands and Lt ankle are normal."). As I have observed before, although the ALJ found this opinion to be unpersuasive, "the fact that these medical experts found [M.T.] to be capable of a higher level of work is ultimately supportive of the ALJ's RFC determination." *Stanley v. Comm'r of Soc. Sec.*, No. 4:22-cv-00527, 2023 WL 2457534, at *4 (S.D. Tex. Mar. 10, 2023) (cleaned up). "An ALJ may properly make a disability determination that is not an adoption of any medical opinion while still basing her decision on substantial evidence." *Golden v. Comm'r of Soc. Sec.*, No. 3:22-cv-00397, 2024 WL 23174, at *3 (S.D. Tex. Jan. 2, 2024) (cleaned up). That is what happened here. Accordingly, the ALJ's decision is supported by substantial evidence.

**B.    THE ALJ DID NOT ERR IN EVALUATING NP KANATT'S OPINION**

M.T. next argues that the ALJ erred by failing to properly evaluate the mental health opinion of NP Kanatt. *See* Dkt. 15 at 12. I disagree.

Because M.T. filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations regarding how the Commissioner evaluates medical opinions and prior administrative findings. 20 C.F.R. § 404.1520c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson*

*v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

On September 24, 2024, NP Kanatt submitted a medical source statement that opined as follows:

> [M.T.'s] ability to understand, remember, or apply information was extremely impaired. Her ability to interact with others was moderately impaired. [M.T.]'s ability to concentrate, persist, or maintain pace and to adapt or manage oneself were markedly

> impaired. [M.T.] was likely to miss work more than four times per month, and she was not capable of handling funds in her best interest.

Dkt. 7-1 at 32; *see also id.* at 1328–32. NP Kanatt only began treating M.T. on February 6, 2024, and last saw M.T. on June 14, 2024, three months prior to NP Kanatt's submitting his opinion. In finding NP Kanatt's opinion unpersuasive, the ALJ observed that NP Kanatt evaluated M.T.'s mental status to be within normal limits "*during the period that is covered by [M.T.]'s regarding the extreme ratings Mr. Kanatt gave [M.T.].*" *Id.* at 32 (emphasis added). The ALJ also found NP Kanatt's opinion to be at odds with M.T.'s function report, in which M.T. said "she is able to drive, prepare lights meals, do light cleaning and shop." *Id.*

M.T. argues that "[a]n ALJ errs by relying on daily activities that do not 'reflect [the] ability to perform the required physical acts day in and day out in the sometimes stressful conditions in which all people work in the real world,' despite substantial contrary evidence." Dkt. 15 at 14 (quoting *Williams v. Kijakazi*, No. 3:21-cv-0923, 2022 WL 2222403, at *2 (N.D. Tex. June 21, 2022)). That may be true, but there is not "substantial contrary evidence" here. There is only NP Kanatt's opinion. Moreover, the Fifth Circuit has held that an ALJ is free to "consider evidence of daily activities in conjunction with other evidence." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

Here, there is logic in the ALJ finding unpersuasive an opinion that M.T. is extremely impaired in her ability to understand, remember, or apply information when M.T. is capable of driving and shopping on her own. There is also logic in the ALJ finding unpersuasive an opinion that imposes *extreme* limits on M.T.'s mental functioning when, during the five-month period that NP Kanatt treated M.T., he found her mental status to be within normal limits. Because I can ascertain a logical bridge between the evidence and the ALJ's decision, I find that the ALJ committed no legal error.

## CONCLUSION

Because I find that the ALJ's decision was supported by substantial evidence and is free of legal error, I affirm the Commissioner's decision.

I will issue a final judgment separately.

SIGNED this __11th__ day of May 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE